JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 23-6798-KK-SSCx | Date: | April 1, 2024 |
|---|---|---|---|
| Title: | *Ruben Silva, et al. v. Money Network Financial, LLC* | | |

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (In Chambers) Order GRANTING Motion to Dismiss the First Amended Complaint [Dkt. 28]

## I.
## INTRODUCTION

On January 22, 2024, plaintiffs Ruben Silva and Russell Harrington ("Plaintiffs") filed the operative First Amended Complaint ("FAC") against defendant Money Network Financial, LLC ("Defendant") asserting putative class action claims arising from Defendant's alleged mismanagement of a state tax refund disbursement program under California's Better for Families Act.  ECF Docket No. ("Dkt.") 26.  On February 5, 2024, Defendant filed the instant Motion to Dismiss the FAC ("Motion"), dkt. 28, and Request for Judicial Notice, dkt. 29.  The Court finds this matter appropriate for resolution without oral argument.  See FED. R. CIV. P. 78(b); L.R. 7-15.  For the reasons set forth below, the Motion is **GRANTED**.

## II.
## BACKGROUND

**A.     PROCEDURAL HISTORY**

On August 18, 2023, Plaintiffs – individuals who elected to receive tax refunds pursuant to the Better for Families Act via prepaid debit cards – filed a putative class action Complaint against defendants Money Network Financial, LLC and Fiserv, Inc. asserting claims for (1) violation of California's Unfair Competition Law ("UCL"), Section 17200 of the California Business and

Professions Code; (2) negligence; (3) breach of fiduciary duty; (4) breach of contract; and (5) breach of the implied covenant of good faith and fair dealing.  Dkt. 1.

On November 6, 2023, defendants Money Network Financial, LLC and Fiserv, Inc. filed a Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. 12.

On November 13, 2023, Plaintiffs voluntarily dismissed their claims against defendant Fiserv, Inc.  Dkt. 15.

On January 9, 2024, the Court issued an Order granting the Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Dkt. 25.  First, the Court concluded Plaintiffs failed to state a claim under the UCL because their UCL claim was premised upon Defendant's alleged breach of a contract between Defendant and the California Franchise Tax Board ("FTB"), and the allegations were insufficient to establish Plaintiffs were intended beneficiaries of that contract.  Id. at 6-7.  Second, the Court concluded Plaintiffs failed to state a claim for negligence because the economic loss doctrine barred such claim.  Id. at 7-9.  Third, the Court concluded Plaintiffs failed to state a claim for breach of fiduciary duty because Plaintiffs failed to adequately allege Defendant knowingly undertook to act on their behalf and for their benefit such that Defendant owed a fiduciary duty to them.  Id. at 9.  Finally, the Court concluded Plaintiffs failed to state a third-party beneficiary claim for breach of the contract between Defendant and the FTB because, again, the allegations in the Complaint were insufficient to establish Plaintiffs were intended beneficiaries of that contract.  Id. at 10-11.  The Court, therefore, dismissed the Complaint with leave to amend.[2]  Id. at 11.

On January 22, 2024, Plaintiffs filed the operative FAC, asserting the following claims:

(1)  First Cause of Action – violation of the UCL;
(2)  Second Cause of Action – negligence;
(3)  Third Cause of Action – breach of contract; and
(4)  Fourth Cause of Action – breach of fiduciary duty.

Dkt. 26 at 18-34.

On February 5, 2024, Defendant filed the instant Motion to Dismiss the FAC ("Motion"), dkt. 28, and Request for Judicial Notice, dkt. 29.  Defendant argues the FAC fails to remedy the deficiencies identified by the Court in its January 9, 2024 Order dismissing the Complaint.  Dkt. 28 at 5.

---

[1] The Court denied Defendant's request for dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing.  Dkt. 25 at 3-5.

[2] In their Opposition to the Motion to Dismiss the Complaint, Plaintiffs requested dismissal of their claim for breach of the implied covenant of good faith and fair dealing.  Dkt. 25 at 11 (citing dkt. 16 at 32).  Accordingly, the Court granted the Motion to Dismiss the Complaint as to this cause of action.  Id.

On February 29, 2024, Plaintiffs filed an Opposition to the Motion. Dkt. 35. On March 14, 2024, Defendant filed a Reply in support of the Motion. Dkt. 36.

The matter thus stands submitted.

**B.     RELEVANT FACTS**

As alleged in the FAC, in 2022, Defendant entered into a contract with the FTB to disburse tax refunds pursuant to the Better for Families Act via prepaid debit cards. FAC ¶¶ 1-2, 22-24. The Better for Families Act tax refund program was intended to "provide relief to Californians from the impacts of high gas prices and other growing costs due to inflation." Id. ¶ 27. The contract between Defendant and the FTB contained provisions "designed to ensure" Defendant disbursed the tax refunds "in the form and manner best determined to expedite payment and mitigate fraud[,]" including provisions "that directly concerned the interests and needs of [tax refund] recipients[.]" Id. ¶¶ 26, 27.

For example, the contract provided that "[t]he State shall require the use of a[] . . . chip enabled [debit] card to offer the maximum protection possible." Id. ¶¶ 5, 26. Defendant's website indicates "[c]hip-enabled cards are very difficult to counterfeit or copy . . . , so data is better protected." Id. ¶ 6. Magnetic stripe technology, on the other hand, is "widely known in the financial industry to be less secure" than chip technology. Id. ¶ 33. According to Plaintiffs, Defendant "routinely provides customers other than [tax refund] recipients with [chip-enabled] cards." Id. ¶ 6. Relatedly, the contract between Defendant and the FTB required Defendant to provide "sophisticated fraud prevention services with evidence of preventing fraud at a success rate of ninety-nine percent [] or higher." Id. ¶ 26. In addition, the contract required Defendant to make "platinum"-level customer service support available to tax refund recipients free of charge, with sufficient contact center agents to "meet[] a ninety percent [] Level of Access[.]" Id. ¶ 27. Lastly, the contract stated Defendant "shall assume responsibility (from the point of activation) for any replacement of debit card funds resulting from fraudulent use of recipients' debit card[s]." Id.

The Complaint further alleges that despite the contract provisions requiring Defendant to provide chip-enabled cards and "sophisticated" fraud prevention services, Defendant "has not provided reasonable or adequate fraud prevention services" and "has distributed thousands of [] debit cards that are not [] chip enabled." Id. ¶ 28. As a result, "many Californians . . . had their [tax refund] funds rapidly depleted by scammers who, predictably, took advantage of the low-security chipless cards' vulnerabilities." Id. ¶ 29. In addition, Defendant's "failure to adequately staff customer service[] lines . . . made it difficult for [tax refund] recipients to report fraud" associated with the debit cards Defendant issued. Id. ¶ 34. Defendant also "fail[ed] to indemnify [tax refund recipients] for fraud losses." Id. ¶ 127. Finally, due to Defendant's "maladministration" of the tax refund disbursement program, "many Californians" never even received their debit cards. Id. ¶ 29.

### III.
### LEGAL STANDARD

A complaint may be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). In considering whether a complaint states a claim, a court must

"construe the pleadings in the light most favorable to the nonmoving party," Capp v. Cnty. of San Diego, 940 F.3d 1046, 1052 (9th Cir. 2019) (quoting Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005)), accepting as true all factual allegations in the complaint and drawing all reasonable inferences in the nonmoving party's favor, Moreno v. UtiliQuest, LLC, 29 F.4th 567, 573 (9th Cir. 2022).  The court, however, need not accept as true "a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

A court should freely grant leave to amend a complaint dismissed for failure to state a claim. FED. R. CIV. P. 15(a)(2); see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).  The court may dismiss without leave to amend, however, "if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies."  Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (citations omitted).

## IV.
## DISCUSSION

### A.    THE FAC FAILS TO STATE A CLAIM UNDER THE UCL

#### 1.    Applicable Law

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice[.]"  Cal. Bus. & Prof. Code § 17200.  A claim under the UCL may be brought by any "person who has suffered injury in fact and has lost money or property as a result of the unfair competition."  Id. § 17204.

"The 'unfair' prong of the UCL creates a cause of action for a business practice that is unfair even if not proscribed by some other law."  Cappello v. Walmart Inc., 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019) (citing Korea Supply Co. v. Lockheed Martin Corp., 63 P.3d 937, 943 (Cal. 2003)). However, a plaintiff cannot bring a UCL claim based on an alleged breach of contract when the plaintiff is only an "incidental beneficiar[y]" with "no standing to recover under th[at] contract." Berryman v. Merit Prop. Mgmt., 152 Cal. App. 4th 1544, 1553, 1555 (Cal. Ct. App. 2007); see also Caltex Plastics, Inc. v. Lockheed Martin Corp., 824 F.3d 1156, 1161 (9th Cir. 2016) (holding claim under UCL's "unfair" prong based on alleged breach of contract failed where plaintiff had not sufficiently alleged that it was intended third-party beneficiary of contract, because parties are "prohibited from bootstrapping an unfair-competition claim using a failed breach-of-contract claim" (internal quotation marks and brackets omitted)).  "Permitting such recovery would completely destroy the principle that a third party cannot sue on a contract to which he or she is merely an incidental beneficiary."  Berryman, 152 Cal. App. at 1553.

In addition, recovery under the UCL is "generally limited" to the equitable remedies of restitution and injunctive relief. Safeway, Inc. v. Superior Ct., 238 Cal. App. 4th 1138, 1147 (Cal. Ct. App. 2015) (citing Clark v. Superior Ct., 235 P.3d 171, 174 (Cal. 2010)). The "traditional principles" governing claims for equitable relief, including the requirement that the plaintiff establish that they lack an adequate remedy at law, apply to UCL claims. Sonner v. Premier Nutrition Corp., 971 F.3d 834, 844 (9th Cir. 2020).

### 2. Analysis

Here, Plaintiffs again fail to state a claim under the UCL. First, as the Court found in its January 9, 2024 Order dismissing the Complaint, Plaintiffs cannot bring a UCL claim premised upon Defendant's alleged breach of its contract with the FTB because Plaintiffs' allegations are insufficient to establish they are intended beneficiaries of that contract. See Berryman, 152 Cal. App. 4th at 1553, 1555; Caltex, 824 F.3d at 1161; see also dkt. 25 at 6-7.

Second, while Plaintiffs now attempt to recast their UCL claim as premised upon Defendant's allegedly unfair conduct – rather than its alleged breach of contract – Plaintiffs have not established they lack an adequate remedy at law such that they are entitled to equitable relief. See Sonner, 971 F.3d at 844. Plaintiffs allege, as a result of Defendant's conduct, "many Californians" either had their tax refund funds "rapidly depleted by scammers" or never received debit cards with their tax refunds. FAC ¶ 29. Thus, the injury alleged by Plaintiffs is the loss of the tax refund funds to which they are entitled, i.e., lost money. While Plaintiffs seek an injunction "requiring [Defendant] to take reasonable steps to identify, and compensate, [tax refund] recipients who have . . . been denied the full benefit of" their tax refunds, id. at 35, Plaintiffs "cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money," see Herskowitz v. Apple, Inc., 301 F.R.D. 460, 482 (N.D. Cal. 2014) (concluding class-wide injunctive relief was unwarranted where proposed injunction was "practically indistinguishable" from an order requiring defendant to pay money to plaintiffs). Moreover, although Plaintiffs additionally seek injunctive relief precluding Defendant "from issuing chip-less cards to [tax refund] recipients" and requiring Defendant "to implement reasonable fraud prevention measures and provide . . . reasonable levels of non-automated customer service," FAC at 35, Plaintiffs cannot demonstrate a "real and immediate threat of repeated injury" as required to establish standing for such relief, see Bolden-Hardge v. Off. of Cal. State Controller, 63 F.4th 1215, 1220 (9th Cir. 2023) ("Past wrongs . . . are insufficient on their own to support standing for prospective relief."). Again, it is unclear why an award of damages to compensate tax refund recipients for funds not received would not be an adequate substitute for the injunctive relief sought by Plaintiffs. See Adams v. Cole Haan, LLC, No. SACV 20-913-JVS-DFMx, 2020 WL 5648605, at *3 (C.D. Cal. Sept. 3, 2020) (stating "lost money" is "a form of harm for which legal damages [are] an adequate remedy").

Thus, Plaintiffs fail to state a claim for unfair business acts or practices in violation of the UCL. Accordingly, the Motion is **GRANTED** as to Plaintiffs' First Cause of Action.

## B. THE FAC FAILS TO STATE A CLAIM FOR NEGLIGENCE

### 1. Applicable Law

"In California, the general rule is that people owe a duty of care to avoid causing harm to others and that they are thus usually liable for injuries their negligence inflicts." S. Cal. Gas Leak

Cases, 441 P.3d 881, 885 (Cal. 2019).  However, under the economic loss doctrine, a plaintiff generally cannot recover in negligence for "purely economic losses."  Id. at 887.  This doctrine "prevent[s] the law of contract and the law of tort from dissolving one into the other."  Robinson Helicopter Co. v. Dana Corp., 102 P.3d 268, 272-73 (Cal. 2004).  Hence, to recover in negligence for purely economic loss, a plaintiff bears the burden of demonstrating that one of the exceptions to this doctrine applies.  Huynh v. Quora, Inc., 508 F. Supp. 3d 633, 654 (N.D. Cal. 2020).

One exception to the economic loss doctrine exists where a party's alleged breach of contract violates a duty that is "independent of the contract" and "aris[es] from principles of tort law."  Erlich v. Menezes, 981 P.2d 978, 983 (Cal. 1999).  Courts generally apply this so-called "independent duty" exception only to claims involving intentional – rather than negligent – conduct, to avoid rendering contractual limitations on liability "meaningless."  In re Zoom Video Comms. Inc. Priv. Litig., 525 F. Supp. 3d 1017, 1040 (N.D. Cal. 2021) (quoting Robinson Helicopter, 102 P.3d at 274).

Another exception to the economic loss doctrine exists where the plaintiff and the defendant have a "special relationship."  J'Aire Corp. v. Gregory, 598 P.2d 60, 63 (Cal. 1979).  This exception applies when "the plaintiff was an intended beneficiary of a particular transaction but was harmed by the defendant's negligence in carrying it out."  S. Cal. Gas Leak Cases, 441 P.3d at 887.  In determining whether such a "special relationship" exists, courts consider: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm."  J'Aire, 598 P.2d at 63.

**2.  Analysis**

Here, Plaintiffs' alleged losses are purely economic.  See FAC ¶ 29.  Nevertheless, Plaintiffs argue the economic loss doctrine does not bar their negligence claim because the independent duty and special relationship exceptions apply.  Dkt. 35 at 12-17.  As discussed below, however, the allegations in the FAC are, again, insufficient to establish the applicability of either exception.

**a.  Independent Duty Exception**

First, Plaintiffs allege Defendant "had an independent duty running to [tax refund recipients] stemming from the fact that it 'had and received' [their] money."  FAC ¶¶ 103-107.  However, even assuming Plaintiffs have adequately alleged Defendant had and received tax refund recipients' money, Plaintiffs cannot state a claim for "money had and received" against Defendant, because Plaintiffs do not allege Defendant failed to remit such money to Plaintiffs.[3]  See Lincoln Nat'l Life Ins. Co. v. McClendon, 230 F. Supp. 3d 1180, 1190 (C.D. Cal. Jan. 26, 2017) (stating elements of "money had and received" claim are: "(1) defendant received money; (2) the money defendant received was for plaintiff's use; and (3) defendant is indebted to plaintiff").  Specifically, Plaintiffs

---

[3] Plaintiff Ruben Silva received a debit card from Defendant that he was able to use "a few times" before the funds were allegedly depleted by third-party "fraudsters."  FAC ¶¶ 42, 44, 46.  Plaintiff Russell Harrington also concedes he has received his tax refund since the Complaint was filed.  Id. ¶ 20.

have not alleged Defendant retains "money which belongs to [them] and which . . . should be returned." See id., 230 F. Supp. 3d at 1190, 1192 (explaining the third element of a "money had and received" claim "effectively measures whether [the d]efendant has returned the [] money"). In fact, tellingly, the FAC does not actually assert a cause of action for "money had and received." See FAC at 18-34. Hence, Plaintiffs cannot establish Defendant breached an independent tort duty arising from money had and received.

Second, Plaintiffs allege Defendant had "an independent duty running to [tax refund recipients] stemming from its negligent performance of professional services." FAC ¶¶ 108-112. In support of this argument, Plaintiffs attempt to characterize Defendant's services as "accounting" services. See dkt. 35 at 12-13. However, this characterization is without merit. Defendant's disbursement of state tax refunds pursuant to a government contract, including its provision of associated fraud prevention and customer support services, does not constitute "accounting" for purposes of a professional negligence claim. See Evans v. Hood Corp., 5 Cal. App. 5th 1022, 1050 (Cal. Ct. App. 2016) (explaining liability for professional negligence arises where an individual "undertaking to render expert services in the practice of a profession or trade" fails "to have and apply the skill, knowledge and competence ordinarily possessed by their fellow practitioners under similar circumstances"). Hence, Plaintiffs cannot establish Defendant owed them an independent tort duty based on the provision of professional services.

Therefore, the independent duty exception to the economic loss doctrine does not apply.

        **b.**      **Special Relationship Exception**

Applying the J'Aire factors, the Court finds Plaintiffs' additional allegations in the FAC remain insufficient to establish a "special relationship" exists between Plaintiffs and Defendant. The first factor – the extent to which the contract between the FTB and Defendant was intended to affect Plaintiffs – weighs against finding a special relationship exists. In its January 9, 2024 Order dismissing the Complaint, the Court concluded the "intended beneficiary" of the contract was the FTB, which contracted with Defendant for the distribution of state tax refunds on its behalf. See S. Cal. Gas Leak Cases, 441 P.3d at 887; see also dkt. 25 at 8. Plaintiffs' new allegations regarding provisions in the contract "that directly concerned the interests and needs of [tax refund] recipients" fail to alter this conclusion. See FAC ¶ 27. For example, the purpose of requiring Defendant to make customer service support available to tax refund recipients free of charge with sufficient contact center agents to meet recipients' needs was to relieve the FTB of the obligation to administer such services. Likewise, the purpose of requiring Defendant to assume responsibility for replacement of debit card funds from the point of activation onwards was to relieve the FTB of the obligation to reimburse tax refund recipients for lost or stolen funds. The fact that Plaintiffs benefited from these provisions does not demonstrate Plaintiffs were intended beneficiaries of the contract for purposes of establishing a "special relationship" between Plaintiffs and Defendant. See Andrews v. Plains All Am. Pipeline, L.P., No. CV 15-4113-PSG-JEMx, 2019 WL 6647930, at *9 (C.D. Cal. Nov. 20, 2019) (concluding fact that oil industry workers "undoubtedly benefited" from defendants' pipeline was insufficient to demonstrate they were "intended beneficiaries" of pipeline and, thus, "special relationship" exception did not apply).

The second factor – the foreseeability of Plaintiffs' injury – weighs slightly in favor of finding a special relationship exists. In its January 9, 2024 Order, the Court found Plaintiffs had not alleged Defendant foresaw that a significant number of Californians would have their debit cards

depleted by scammers.  See dkt. 25 at 8.  In the FAC, Plaintiffs again allege magnetic stripe technology is "widely known" to be "less secure" than chip technology and "many Californians . . . had their [tax refund] funds rapidly depleted by scammers" as a result of Defendant's distribution of "chipless cards" and inadequate fraud prevention services.  FAC ¶¶ 28-29, 33.  Plaintiffs now also allege Defendant's website indicates "[c]hip-enabled cards are very difficult to counterfeit or copy . . . , so data is better protected," and Defendant "routinely provides customers other than [tax refund] recipients with [chip-enabled] cards."  Id. ¶ 6.  While these allegations once again raise the specter of the foreseeability of Plaintiffs' injury, Plaintiffs fail to allege Defendant actually foresaw that a significant number of Californians would have their debit cards depleted by scammers.  Moreover, as the Court previously noted, "more than mere foreseeability" is required to impose a duty of care.  S. Cal. Gas Leak Cases, 441 P.3d at 887-88 (citing Bily v. Arthur Young & Co., 834 P.2d 745, 761-62 (Cal. 1992) (en banc)).

       The third factor – the degree of certainty of Plaintiffs' injury – weighs in favor of finding a special relationship exists.  Plaintiffs allege "many Californians . . . had their [tax refund] funds rapidly depleted" or never even received debit cards with their refunds.  FAC ¶ 29.  For purposes of resolving the instant Motion, the Court accepts these allegations as true.  See Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (holding all factual allegations in a complaint "are taken as true" when evaluating the sufficiency of the complaint).  Thus, Plaintiffs' allegations establish the certainty of their injury.  However, this factor is not dispositive.  See Andrews v. Plains All Am. Pipeline, L.P., No. CV 15-4113-PSG-JEMx, 2017 WL 10543401, at *11 (C.D. Cal. Aug. 25, 2017) ("[N]either Plaintiffs nor the Court believes that [the degree of certainty] factor is dispositive[.]"), recons. granted on other grounds, 2019 WL 6647930 (C.D. Cal. Nov. 20, 2019).

       The fourth and fifth factors – the closeness of the connection between Defendant's conduct and Plaintiffs' injury, and the moral blame attached to Defendant's conduct – weigh against finding a special relationship exists.  As the Court found in its January 9, 2024 Order, Defendant was not directly responsible for Plaintiffs' injury.  See dkt. 25 at 8.  Rather, third party "scammers," not Defendant, depleted their tax refund debit cards.  FAC ¶ 29.

       The sixth factor – the policy of preventing future harm – also weighs against finding a special relationship exists.  As the Court found in its January 9, 2024 Order, Defendant "already ha[s] strong incentives" to provide adequate services to the government and to consumers.  See Mega RV Corp. v. HWH Corp., 225 Cal. App. 4th 1318, 1342 (Cal. Ct. App. 2014) (concluding imposition of duty on retail sellers would not reduce likelihood of future harm because a retail seller "already ha[s] strong incentives," including reputational incentives, to perform adequate services); see also dkt. 25 at 8-9.  Plaintiffs' argument that, "if Defendant knows it can underbid, skimp, act negligently, and then hide behind the confluence of the economic loss doctrine and government apathy, it will persist in harming others," see dkt. 35 at 16-17, constitutes mere speculation.

       Hence, the J'Aire factors weigh against finding a special relationship exists between Plaintiffs and Defendant such that Defendant owed a duty to avoid negligently inflicting purely economic losses on Plaintiffs.

       The Court, thus, finds no exception to the economic loss doctrine is applicable.  The economic loss doctrine, therefore, bars Plaintiffs' claim for negligence.  Accordingly, the Motion is **GRANTED** as to Plaintiffs' Second Cause of Action.

**C.     THE FAC FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT**

   **1.     Applicable Law**

"[O]nly a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach." GECCMC 2005-C1 Plummer St. Off. Ltd. v. JPMorgan Chase Bank, 671 F.3d 1027, 1033 (9th Cir. 2012). Under California law, a party seeking to bring a breach of contract claim as an intended third-party beneficiary must show (1) they are "likely to benefit from the contract," (2) a "motivating purpose" of the contract is providing a benefit to them, and (3) permitting them to bring the third-party beneficiary claim "is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." Goonewardene v. ADP, LLC, 434 P.3d 124, 126-27 (Cal. 2019). The contracting parties' mere "knowledge that a benefit to the third party may follow from the contract" is insufficient to establish intended beneficiary status. Id. at 133.

   **2.     Analysis**

Here, Plaintiffs' additional allegations in the FAC remain insufficient to establish Plaintiffs are intended beneficiaries of the contract between Defendant and the FTB. First, Plaintiffs fail to adequately allege a "motivating purpose" of the contract was providing a benefit to Plaintiffs. See Goonewardene, 434 P.3d at 126-27. As the Court found in its January 9, 2024 Order dismissing the Complaint, the motivating purpose of the contract between the FTB and Defendant was to provide a benefit to the FTB, namely, distribution of state tax refunds on the FTB's behalf – even though Plaintiffs also benefited.[4] See In re Bank of Am. Cal. Unemployment Benefits Litig., 674 F. Supp. 3d 884, 938 (S.D. Cal. 2023) (finding "motivating purpose" of contract between state unemployment agency and bank for distribution of benefits via prepaid debit cards was bank's provision of service to state unemployment agency). Moreover, as discussed above, Plaintiffs' new allegations regarding provisions in the contract "that directly concerned the interests and needs of [tax refund] recipients" fail to alter the conclusion that the purpose of the contract was to absolve the FTB of responsibility for administering certain aspects of the tax refund program. See FAC ¶ 27. The fact that the contract required Defendant to meet particular standards in providing services to tax refund recipients, see FAC ¶¶ 26-27 (requiring "sophisticated" fraud prevention services and "platinum"-level customer service support), does not establish the motivating purpose of the contract was to benefit tax refund recipients. Finally, Plaintiffs' citation to Zigas v. Superior Ct., 120 Cal. App. 3d 827 (Cal. Ct. App. 1981), in which the court held rent-cap provisions contained in a financing agreement between the federal government and a landlord manifested an intent to benefit the landlord's tenants, is inapposite. In Zigas, the landlord had entered into the agreement at issue in order to obtain a federally insured mortgage. Id. at 830-31. Here, however, Defendant entered into the agreement at issue specifically to provide a service on the FTB's behalf. See FAC ¶¶ 1-2, 22-24.

Second, Plaintiffs fail to adequately allege permitting Plaintiffs to bring the instant breach of contract claim is "consistent" with the contract's objectives or Defendant and the FTB's reasonable

---

[4] Plaintiffs argue, because the government is "charged with advancing the social welfare of its citizens," the third-party beneficiary analysis under Goonewardene is altered when the government is a party to the contract at issue. See dkt. 35 at 21. However, Plaintiffs cite no authority for this proposition. See id.

expectations. See Goonewardene, 434 P.3d at 126-27. In their Opposition to the instant Motion, Plaintiffs argue allowing their breach of contract claim to proceed is not only consistent with the contract's objectives but also necessary to enforce them, because the state lacks adequate enforcement incentive. See dkt. 35 at 23-24. However, Plaintiffs conflate the objectives of the Better for Families Act tax refund program with the objectives of the contract at issue. While third-party enforcement of the fraud prevention provisions might be consistent with the tax refund program's objective of "provid[ing] relief to Californians from the impacts of high gas prices and other growing costs due to inflation[,]" FAC ¶ 27, Plaintiffs' allegations do not establish such enforcement would be consistent with the contract's objective of delegating administration of the tax refund program to Defendant. Hence, Plaintiffs have not shown permitting them to bring the instant breach of contract claim would be consistent with the objectives of the contract between Defendant and the FTB or their reasonable expectations.

Thus, because Plaintiffs have not adequately alleged they are intended beneficiaries of the contract between Defendant and the FTB, Plaintiffs fail to state a third-party beneficiary claim for breach of contract. Accordingly, the Motion is **GRANTED** as to Plaintiffs' Third Cause of Action.

**D.    THE FAC FAILS TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY**

**1.    Applicable Law**

The elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) a breach of that fiduciary duty, and (3) resulting damage. Pellegrini v. Weiss, 165 Cal. App. 4th 515, 524 (Cal. Ct. App. 2008). A fiduciary duty exists where an entity "either knowingly undertake[s] to act on behalf and for the benefit of [an individual], or . . . enter[s] into a relationship which imposes that undertaking as a matter of law." City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 181 P.3d 142, 150 (Cal. 2008). A fiduciary duty may also arise when a "party's vulnerability is so substantial as to give rise to equitable concerns underlying the protection afforded by the law governing fiduciaries." Id. at 152. Nevertheless, "disparity of bargaining power" does not necessarily establish a fiduciary relationship. Id.

**2.    Analysis**

Here, Plaintiffs' additional allegations in the FAC remain insufficient to establish Defendant owed a fiduciary duty to Plaintiffs, because Plaintiffs have not adequately alleged Defendant knowingly undertook to "act on behalf and for the benefit of" Plaintiffs. See City of Hope Nat'l Med. Ctr., 181 P.3d at 150. As discussed above, the purpose of the contract between Defendant and the FTB was to provide a benefit to the FTB, namely, distribution of state tax refunds on the FTB's behalf. Furthermore, as the Court concluded in its January 9, 2024 Order dismissing the Complaint, Plaintiffs' allegations that many putative class members "had been adversely impacted by the economic disruptions" caused by the COVID-19 pandemic and, "in practice," a debit card issued by Defendant was "the only way" for some putative class members to receive their tax refund,[5] FAC

---

[5] Debit cards issued by Defendant were not the exclusive method for receiving tax refunds. See FAC ¶ 90 (indicating tax refund recipients could elect to receive the tax refund via direct deposit).

¶ 133, do not establish Plaintiffs had a unique vulnerability "so substantial as to give rise to equitable concerns," see City of Hope Nat'l Med. Ctr., 181 P.3d at 152.

Thus, Plaintiffs have not adequately alleged Defendant owed them a fiduciary duty. Accordingly, the Motion is **GRANTED** as to Plaintiffs' Fourth Cause of Action.

### E. LEAVE TO AMEND WOULD BE FUTILE

Leave to amend should be "freely given," Foman v. Davis, 371 U.S. 178, 182 (1962); see also FED. R. CIV. P. 15(a)(2), except where amendment "would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit," Jackson v. Bank of Haw., 902 F.2d 1385, 1387 (9th Cir. 1990). Amendment would be futile, and the court may dismiss without leave to amend, "if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies." Telesaurus, 623 F.3d at 1003.

Here, Plaintiffs have been given an opportunity to remedy the deficiencies identified by the Court in its January 9, 2024 Order dismissing the Complaint, but have failed to do so. In fact, with the exception of the few additional allegations described above, the FAC is substantially similar to the Complaint. Most significantly, the additional allegations do not alter the Court's analysis. Hence, the Court finds further leave to amend would be futile.

### V.
### CONCLUSION

For the reasons set forth above, the Motion is **GRANTED** and the instant action is **DISMISSED WITH PREJUDICE**. The Clerk of Court shall close this action. (JS-6)

**IT IS SO ORDERED.**